

Kelly E. Farnan
302-651-7705
Farnan@rlf.com

April 24, 2019

**VIA CM/ECF AND HAND DELIVERY**
The Honorable Richard G. Andrews
U.S. District Court of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, DE 19801

Re:   *Sprint Communications Co. L.P. v. Charter Communications, Inc., et al.*,
      C.A. No. 18-02033-RGA

Dear Judge Andrews:

Defendants ("Charter") respectfully request permission to file an early, case dispositive, summary judgment motion in this matter. Plaintiff ("Sprint") has asserted three patents in the present case: US Patent Nos. 6,754,907 ("the '4907 patent"), 6,757,907 ("the '7907 patent") (collectively "the '907 patents"), and 7,559,077 ("the '077 patent") (collectively "the Asserted Patents"). As a matter of law, Charter cannot be found to infringe any of these three patents.

**Collateral Estoppel Bars Sprint's '907 Patent Claims.** Sprint previously sued Comcast, and lost, on the '907 patents based on the *Comcast* court's claim constructions. *Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co., LP*, 38 F. Supp. 3d 589, 617 (E.D. Pa. 2014). Sprint appealed the judgment against it on the '907 patents to the Federal Circuit but subsequently dismissed its appeal. Under the *Comcast* court's constructions, Charter's accused products do not infringe any claim of the '907 patents for the same reason the *Comcast* court found that Comcast's accused products do not infringe the '907 patents.

In particular, the *Comcast* court construed the '907 patents to require the system to operate <u>without</u> the use of a set-top box for remote control:

| TERM | CONSTRUCTION |
|---|---|
| "operating a video-on-demand system" | Operating a video-on-demand system <mark>without the use of a set-top box for remote control of the video-on-demand system</mark> |
| "video control signal" | A video control signal generated and processed <mark>without the involvement of a set-top box for remote control of the video-on-demand system</mark> |
| "viewer control signal" | A viewer control signal generated and processed <mark>without the involvement of a set-top box for remote control of the video-on-demand system</mark> |

∎ ∎ ∎

The Honorable Richard G. Andrews
April 24, 2019
Page 2

*Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co., LP*, 38 F. Supp. 3d 589, 617 (E.D. Pa. 2014) (emphasis added). The *Comcast* court construed these limitations based on statements in the '907 patents' specification that specifically disclaimed the use of a set-top box for remote control. (*Id*. at 609-13.)

Based on these claim constructions, the *Comcast* court granted summary judgment of non-infringement. *Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co., LP*, 203 F. Supp. 3d 499, 553 (E.D. Pa. 2016). The Comcast accused product, Remote Tune, in fact, <u>required</u> a set-top box that was responsible for sending a start session message to cause the video-on-demand system to send video for display on the television. Because the set-top box <u>was</u> involved in remote control of the video-on-demand system, the court ruled there was no infringement of the '907 patents as a matter of law. *Id.*at 557.

For the same reasons, Charter does not infringe the '907 patents as a matter of law. Just as in *Comcast*, the accused Charter services rely on and include set-top boxes. (*See, e.g.*, D.I. 34 at 46.) For example, the "Send to TV" and "Watch on TV" features accused in Sprint's Amended Complaint require the set-top box to tune to the requested channel. (*Id*.) Public documents show that once the request to tune to a channel is made to the set-top box, the set-top box is responsible for sending a start session message to cause the video-on-demand system to send video for display on the television. This is the <u>same</u> functionality that the *Comcast* court found non-infringing as a matter of law. Just as with *Comcast*, here, the set-top box in the Charter accused services <u>is</u> involved in remote control of the video-on-demand system, and therefore, Charter does not infringe the '907 patent as a matter of law.

Sprint is collaterally estopped from now seeking a <u>different</u> construction of these terms against Charter in the present case. Under Third Circuit law, collateral estoppel applies where "(1) the issue sought to be precluded is the same as that involved in the prior art; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." *Burlington N. R.R. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231-32 (3rd Cir. 1995). All four requirements are satisfied here. The interpretation of the above-identified claims is the same issue involved in *Comcast*. The issue was actually litigated with Sprint having been afforded a full and fair opportunity to litigate the issue as exemplified by the extensive claim construction briefing and *Markman* hearing that occurred in that case. These constructions were essential to the court's final and valid judgment that Comcast's Remote Tune system does not infringe. And the court's final and valid judgment was appealed to the Federal Circuit. Sprint subsequently dismissed its appeal of that judgment after Comcast and Sprint reached a settlement.

Sprint's arguments to the contrary lack merit. Sprint contends that issue preclusion does not apply because the *Comcast* court only construed some of the claims and Sprint might assert different claims. But the "video control signal" or "viewer control signal" claim elements, which the *Comcast* court construed as shown above, are required in <u>each</u> claim of the '907 patents. Sprint argues that issue preclusion is inapplicable because the parties in *Comcast* later settled on appeal. However, a settlement during appeal when the district court's order was final and appealable under Rule 54 does not preclude a finding of collateral estoppel. *Free Speech Coalition, Inc. v. Attorney*

The Honorable Richard G. Andrews
April 24, 2019
Page 3

*General of U.S.*, 677 F.3d 519, 541 (3rd Cir. 2012); *Owens v. Residential Credit Solutions, Inc.*, Case No. 14-cv-1148, 2015 WL 1566168, at *6 (W.D. Pa. April 8, 2015) (following *In re Brown*, 951 F.2d 564, 569 (3rd Cir. 1991)). Accordingly, Sprint is bound by the *Comcast* court's constructions. *See Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1357-60 (Fed. Cir. 2017) (collateral estoppel applied to patentee given prior district court's construction of two claim terms and granting summary judgment of non-infringement in subsequent case in favor of defendant); *Molinaro v. Fannon/Courier Corp.*, 745 F.2d 651, 655 (Fed. Cir. 1984) (same); *Biovail Labs. Int'l SRL v. Intelgenx Corp.*, Case No. 09-cv-605, 2010 WL 5625746, at *3-*5 (D. Del. Dec. 27, 2010) (finding the patentee collaterally estopped from offering a construction of a term previously construed in prior action in which patentee suffered summary judgment of non-infringement based on that construction, and therefore, applying the prior claim construction to the present suit).

**The '077 Patent Claims A Nonsensical Math Equation That No One Uses.** The '077 patent is directed to a video system for downloading and playing video, and specifically to determining when to initiate playing a video based on a first time period for displaying video and a second time period for downloading video—a form of video buffering. (D.I. 34-3 ('077 patent) at Abstract.) Each claim in the '077 requires the same specific mathematical equation for calculating these time periods:

> determining when to initiate transfer of a video signal including the video from the memory based on a first time period and a second time period wherein the **first time period is determined based on the video display rate times a first amount of the video** in the memory and the **second time period is determined based on a network transfer rate times a second amount of the video** to be subsequently received in the network signal.

(D.I. 34-3 ('077 patent) at claim 20 (emphasis added).) In other words, the claims require that a first and second time period be calculated using the following equations:

[**first time period**] = [**video display rate**] × [**first amount of video**]

[**second time period**] = [**network transfer rate**] × [**second amount of video**]

The '077 patent's specification supports these definitions of time period and the equation used to determine these time periods. (*See* D.I. 34-3 ('077 patent) at 4:39-48.)

Unfortunately for Sprint, this claimed equation for the time period <u>does not result in a time period</u>—indeed, no video system, including the Charter accused services, uses the claimed calculations. Specifically, the claimed equations result in a nonsensical number enumerated in bits$^2$/second, which is not a measurement of time. For example, a video display rate and network transfer rate are measured in bits/second (bits per second) and video data is measured in bits. Inserting these measurements into the claimed equation for the first time period, results as follows:

The Honorable Richard G. Andrews
April 24, 2019
Page 4

$$[\text{first time period}] = \frac{[\text{bits}]}{[\text{second}]} \times [\text{bits}] = \frac{[\text{bits}^2]}{[\text{second}]}$$

Bits squared divided by a second is nonsensical. It is not a time period. And nowhere does Sprint provide a Rule 11 basis for alleging that Charter performs such a nonsensical calculation. The same result occurs when inserting these measurements into the claimed equation for the second time period.

Sprint's response fails to acknowledge that the specific calculation it claimed is required for infringement. Sprint relies on the doctrine of equivalence to try and avoid its claimed equation. But Sprint is precluded from relying on this doctrine, because of statements and amendments it made during prosecution. During prosecution of this patent, the application amended the claims to specifically include these equations to overcome the examiner's prior art rejections. (Ex. A (Appl. No. 09/998.569, April 26, 2006 Amendment After Non-Final Rejection) at 5, 17.) The applicant then repeatedly stated, in subsequent office actions rejecting the claims over prior art, that the claims are valid over additional prior art, because none of the art discloses these specific equations. (Ex. B (Appl. No. 09/998.569, September 13, 2006 Response After Final Rejection) at 13; Ex. C (Appl. No. 09/998.569, December 14, 2006 Appeal Brief) at 4-6.)

Sprint contends that a "display rate" or "transfer rate" are not limited to units of content (e.g., bits) divided by unit of time (e.g., a second). Sprint contends that these rates can be enumerated in seconds/bit (seconds per bit). However, neither the specification nor the extrinsic evidence support this reading. (D.I. 34-3 ('077 patent) at 4:39-48.)[1] And even if this was a reasonable interpretation of the claims—which it is not—Charter's accused services do not calculate a time period using seconds/bit. Indeed, no video service would use such an equation. If the measure for rate is time per data, as Sprint proposes, a rate calculation would render a mathematical impossibility, because it is not mathematically possible to divide by zero (*e.g.*, seconds/0 bits). A video service that measures rate by time per data, would be inoperable in many situations, such as when the video system loses its network connection, rending the system in error. Sprint has no Rule 11 basis for asserting the Charter accused services perform either the claimed calculation (bits squared per second) or Sprint's "interpretation" (seconds per bit).

**Charter's Proposed Motion Is Case Dispositive.** If granted, Charter's proposed summary judgment motion would resolve all infringement allegations in the case, and thus, resolve this case in its entirety. Resolution of Charter's proposed motion at an early stage in this case would avoid wasteful litigation concerning Sprint's Asserted Patents given infringement cannot be proven as a matter of law.

---

[1] The *Microsoft Computer Dictionary* (5th Ed.) provides the definition of transfer rate as: "The rate at which a circuit or a communications channel transfers information from source to destination, as over a network or to and from a disk drive. ***Transfer rate is measured in units of information per unit of time—for example, bits per second or characters per second.***"

The Honorable Richard G. Andrews
April 24, 2019
Page 5

For the foregoing reasons, Charter requests leave to file an early summary judgment motion of non-infringement of the Asserted Patents.

                                                  Respectfully,

                                                  */s/ Kelly E. Farnan*

KEF/lll                                          Kelly E. Farnan (#4395)
Attachments