IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., <br>                 Plaintiff; <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC., CHARTER COMMUNICATIONS HOLDINGS, LLC, SPECTRUM MANAGEMENT HOLDING COMPANY, LLC, CHARTER COMMUNICATIONS OPERATING, LLC, TIME WARNER CABLE, LLC, <br>                 Defendants. | Civil Action No. 18-2033-RGA |

MEMORANDUM

Before me are Charter's objections (D.I. 216) to the Magistrate Judge's Report and Recommendation. (D.I. 215). I have considered the parties' briefing. (D.I. 216, 222). For the following reasons, Charter's objections (D.I. 216) are sustained. Charter's motion for summary judgment of non-infringement (D.I. 188) is granted.

I. **BACKGROUND**

Sprint sued Charter for infringement of U.S. Patent Nos. 6,754,907 ("the '4,907 patent"), 6,757,907 ("the '7,907 patent"), and 7,559,077. (D.I. 1). The third patent, the 7,559,077 patent, was later dismissed with prejudice. (D.I. 99). Sprint accuses Charter's "Send-to-TV" feature of infringing the '4,907 and '7,907 patents (collectively "the '907 patents"). (D.I. 189-1, Ex. 2 at 2). The Send-to-TV feature allows Charter customers to use an app on a device such a phone to play video-on-demand content on their television. (D.I. 190 at 7). Two sets of customers are

1

included in Sprint's allegations—those using the Spectrum Guide program in legacy Charter markets and those using the Spectrum Guide program in legacy Time Warner Cable ("TWC") and Bright House Networks ("BHN") markets. (D.I. 190 at 8; D.I. 189-2, Ex. 3 at 3).

Charter moves for summary judgment of non-infringement of all asserted claims of the '907 patents. (D.I. 190 at 1).

## II. LEGAL STANDARD

The standard of review of a Magistrate Judge's Report and Recommendation on a motion for summary judgment is *de novo*. Fed. R. Civ. P. 72(b)(3).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Summary judgment of noninfringement "is appropriate when it is apparent that only one conclusion as to infringement could be reached by a reasonable jury." *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002).

## III. DISCUSSION

I construed several claim terms to exclude the "use" or "involvement" of a "set-top box for remote control." (D.I. 168 at 2-3). For example, the term "operating a video-on-demand system" means "operating a video-on-demand system without the use of a set-top box for remote control." (*Id.* at 2). All asserted claims in the '907 patents contain such a term.

Charter described how the accused systems work in response to an interrogatory. In that response, there is evidence that the accused systems use a set-top box for remote control. The interrogatory response includes flow diagrams and descriptions of how the accused systems operate. (D.I. 189-2, Ex. 3 at 28-32, 35-39). The interrogatory itself is uncontested. (D.I. 215 at 5).

The parties devote many pages to arguments about the minutiae of the flow diagrams. I do not think a deep dive is necessary to capture the set-top box's involvement in the "Send-to-TV" process. To summarize, when a user selects an "asset" (or content) to play, a message gets sent to the set-top box. (D.I. 189-2, Ex. 3 at 30 ¶¶ 1-2). The set-top box then "direct[s]" another component to "launch an active video session." (*Id.* ¶ 3). Components other than the set-top box then identify and retrieve information about the content the user requested and display information about that content on the user's television. (*Id.* ¶¶ 3-4). The user can then press "Watch" with his or her remote control to confirm playback. When the user selects "Watch," "the remote control device sends a corresponding signal to the [set-top box], which then sends a signal confirming the remote control command to the SGUI module of the Spectrum Guide platform to initiate retrieval" of the requested program. (*Id.* at 30-31 ¶¶ 5-6). Several other steps occur until the set-top box tunes to the right channel and downloads the program for playback to the user. (*Id.* at 31 ¶ 9).[1]

Sprint raises various arguments for how the set-top box is not involved in remote control. Sprint's theory appears to be that another component in the Send-to-TV feature, the "SGUI,"

---

[1] I have cited to the flow diagram and description describing the legacy Charter customers, but the flow diagram and description for the TWC/BHN customers are substantially the same. (D.I. 189-2, Ex. 3 at 36-39). Sprint's answering brief (D.I. 197) reads as though there is only one accused service.

3

remotely controls operation of the video-on-demand system. (*See* D.I. 222). According to Sprint, "there is no evidence that Charter's [set-top box] ever is informed what video was selected by the user, and Charter's [set-top box] does not send any messages to the [video-on-demand] server prior to video playback." (*Id.* at 6). The claim construction, however, requires that the set-top box cannot be "use[d]" for or "involve[ed]" in remote control. That other components are also involved, or even more prominently involved, in remote control is of no import. The process outlined in Charter's interrogatory, which is undisputed, uses and involves a set-top box for remote control. In fact, when a user selects "Watch" on the remote control, it is the set-top box that receives the message and kicks off retrieval of the program. (D.I. 189-2, Ex. 3 at 30-31 ¶¶ 5-6).

The Magistrate Judge found that Charter's briefing contained statements of fact that were inconsistent with the interrogatory response. (D.I. 215 at 13). Ultimately, I agree with Charter that these details are not material. (D.I. 216 at 7-10). Even if there are inconsistencies, they relate to what information is communicated to and from the set-top box during the "Send-to-TV" process. (*See* D.I. 215 at 15-22). I do not think the precise information relayed to and from the set-top box matters. The interrogatory makes clear that the set-top box receives signals from a user's remote control, and in response sets off a chain of events that ends in the video-on-demand content being played on the user's television. Thus, the set-top box is clearly "use[d]" and "involve[d]" in the remote control of the video-on-demand system.

Defendants' objections (D.I. 216) to the Report and Recommendation (D.I. 215) are sustained. Defendants' motion for summary judgment of non-infringement on all asserted

4

claims of U.S. Patent Nos. 6,754,907 and 6,757,907 (D.I. 188) is granted.

A separate order will issue.

/s/ Richard G. Andrews<br>
United States District Judge